# Illinois Official Reports

## Appellate Court

---

### *Village of Vernon Hills v. Heelan*, 2014 IL App (2d) 130823

---

| | |
|---|---|
| Appellate Court Caption | THE VILLAGE OF VERNON HILLS, Plaintiff and Counter-defendant-Appellant and Cross-Appellee, v. WILLIAM J. HEELAN, Defendant and Counterplaintiff-Appellee and Cross- Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0823 |
| Filed | July 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | When the board of trustees of plaintiff village's police pension fund awarded defendant a line-of-duty disability pension for the hip injury he suffered while responding to a "panic call alarm," the award established that defendant suffered a "catastrophic injury" that entitled defendant to the payment of health insurance premiums for himself, his wife, and his children pursuant to section 10(a) of the Public Safety Employee Benefits Act, since the Illinois Supreme Court held in *Krohe* that the legislature intended the term "catastrophic injury" to be synonymous with an injury resulting in the award of a line-of-duty disability pension under the Pension Code; therefore, the trial court's entry of a declaratory judgment for defendant finding that plaintiff village was obligated to pay the health insurance premiums for defendant and his family was affirmed, and the denial of defendant's motion for sanctions under Supreme Court Rule 137 was also upheld in the absence of any bad faith in the village's challenge of the *Krohe* decision. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 11-MR-1683; the Hon. Margaret J. Mullen, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Keith L. Hunt and Bradley E. Faber, both of Hunt & Associates, P.C., of Chicago, for appellant.

Charles W. Smith, of Smith, LaLuzerne & Hartman, Ltd., of Waukegan, for appellee.

Brian D. Day and Roger Huebner, both of Illinois Municipal League, of Springfield, *amicus curiae*.

Panel

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justice Spence concurred in the judgment and opinion.
Justice McLaren dissented, with opinion.

**OPINION**

¶ 1 The Board of Trustees of the Vernon Hills Police Pension Fund (Board) awarded a line-of-duty disability pension (40 ILCS 5/3-114.1 (West 2010)) to defendant, police officer William J. Heelan. Thereafter, plaintiff, the Village of Vernon Hills (Village), filed a complaint in the trial court seeking a declaratory judgment that it was not obligated under section 10 of the Public Safety Employee Benefits Act (Act) (820 ILCS 320/10 (West 2010)) to pay the health insurance premiums for Heelan, his wife, and his two children. Heelan filed a counterclaim seeking a declaratory judgment that the Village was obligated under the Act.[1] The Village appeals from the trial court's declaratory judgment in Heelan's favor; Heelan cross-appeals from the trial court's denial of his motion for sanctions under Illinois Supreme Court Rule 137 (eff. July 1, 2013). For the following reasons, we affirm.

¶ 2 **I. BACKGROUND**

¶ 3 In December 2009, while on patrol, Heelan, a 20-year veteran of the Village's police department, was dispatched to a "panic call alarm." Upon arrival at the scene, Heelan saw an unknown man exiting a building. As he quickly approached the man, Heelan slipped on a patch of ice and fell on his right side at the edge of a curb. Heelan was taken by ambulance to a hospital emergency room, where he was X-rayed, prescribed pain medication, and released. He followed up with various physicians and underwent physical therapy. An MRI showed that Heelan suffered a labral tear in his right hip.

---

[1]In his counterclaim, Heelan also sought attorney fees pursuant to the Attorneys Fees in Wage Actions Act (705 ILCS 225/1 (West 2010)). The trial court granted the Village's motion for summary judgment on this claim. This order is not at issue in this appeal.

¶ 4        Dr. Jay Levin conducted an independent medical evaluation of Heelan in connection with a claim Heelan filed under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2010)). Dr. Levin opined that the December 2009 incident had aggravated Heelan's preexisting right hip osteoarthritis. According to Heelan, prior to the incident, he had not experienced any pain or problems from arthritis.

¶ 5        During the year following the incident, the Village paid Heelan his full salary pursuant to the Public Employee Disability Act (5 ILCS 345/1 (West 2010)). Heelan underwent a right hip replacement in April 2010. After this surgery, Heelan returned to work on light duty for about two months. His right hip replacement exacerbated his left hip osteoarthritis, and Heelan underwent a left hip replacement in September 2010. He did not return to work after this second surgery. Heelan and the Village subsequently settled Heelan's workers' compensation claim in a lump-sum agreement.

¶ 6        In December 2010, Heelan filed an application for a line-of-duty disability pension under section 3-114.1 of the Illinois Pension Code (40 ILCS 5/3-114.1 (West 2010)). The Board conducted a hearing on June 28, 2011. Pursuant to section 3-115 of the Illinois Pension Code (40 ILCS 5/3-115 (West 2010)), the Board admitted into evidence the reports of three physicians selected by the Board–Dr. Joseph Meis, Dr. Thomas Gleason, and Dr. Joshua Jacobs. Drs. Meis and Jacobs each certified that Heelan was "disabled to a point that he [was] not able to perform his duties as a police officer." Dr. Meis identified Heelan's hip replacements as the conditions that disabled him, while Dr. Jacobs identified Heelan's right and left hip osteoarthritis as the disabling conditions. Dr. Jacobs further certified that it was "medically possible" that Heelan's disability resulted from an act of duty or the cumulative effects of acts of duty, specifically identifying the December 2009 incident as the cause of Heelan's disability. Dr. Gleason, on the other hand, opined in his report that Heelan was not disabled to a point of being unable to perform his police duties, "unless police procedure to incarcerate arrested persons as required exceeds the medium level as defined by the [Illinois] Department of Labor Guidelines." Dr. Gleason certified that, if Heelan were disabled, it was medically possible that his disability resulted from an act of duty or the cumulative effects of acts of duty.

¶ 7        The Board also heard telephone testimony from Dr. Gleason. Dr. Gleason testified that he would not recommend that Heelan engage a 200-pound person resisting arrest or run after a fleeing suspect. Dr. Gleason agreed on cross-examination that, if the service requirements of the Village police department exceeded the medium level of the Department of Labor guidelines, Heelan was disabled. After considering the evidence, the Board determined that Heelan qualified for a line-of-duty disability pension and it adopted its written findings and decision on August 24, 2011.

¶ 8        On September 22, 2011, the Village filed its complaint seeking a declaratory judgment that Heelan was not eligible for health insurance benefits under the Act. In its complaint, the Village alleged that Heelan had not suffered a catastrophic injury, as required by section 10(a) of the Act (820 ILCS 320/10(a) (West 2010)), and that Heelan's injury had not resulted from his response to what he reasonably believed to be an emergency, as required under section 10(b) of the Act (820 ILCS 320/10(b) (West 2010)). The Village acknowledged *Krohe v. City of Bloomington*, 204 Ill. 2d 392 (2003), in which the court held that a catastrophic injury is synonymous with an injury resulting in a line-of-duty disability pension, but the Village asserted that *Krohe* was factually distinguishable and did not address the issues raised in the

Village's complaint. Heelan answered the complaint and filed his counterclaim seeking a declaratory judgment that the Village was obligated to provide the insurance benefits.

¶ 9 On June 4, 2012, the Village filed notices of deposition of Drs. Levin, Meis, Jacobs, and Gleason. Heelan moved to strike the depositions, arguing that the testimony would not be relevant to the proceedings or, alternatively, that the Village was collaterally estopped from contesting Heelan's injury. On August 24, 2012, the trial court granted Heelan's motion to strike, relying on *Krohe* and its progeny. The court noted that in *Krohe* the supreme court held the term "catastrophic injury" in section 10(a) of the Act is a term of art meaning an injury resulting in the award of a line-of-duty disability pension (see *Krohe*, 204 Ill. 2d at 400). The court elaborated, "I know that because not only does *Krohe* say it, but the *Nowak* case [(*Nowak v. City of Country Club Hills*, 2011 IL 111838)] says it. Also, it's an Illinois Supreme Court case. And the Second District in the *Richter* case [(*Richter v. Village of Oak Brook*, 2011 IL App (2d) 100114)] says *Krohe* says it. So if I needed any reassurance, I certainly have it in those cases that construe *Krohe*." The Village subsequently filed a motion to reconsider the court's ruling, which the court denied.

¶ 10 On February 26, 2013, Heelan filed a motion *in limine* to bar any testimony on the issue of whether he had suffered a catastrophic injury under section 10(a) of the Act. Heelan argued that the Village was collaterally estopped from asserting that he did not suffer a catastrophic injury. Relying on the trial court's August 24, 2012, order granting his motion to strike the depositions, Heelan further contended that, under *Krohe*, the Village was prohibited from denying that he suffered a catastrophic injury. The court granted the motion *in limine*.

¶ 11 On March 18, 2013, the matter proceeded to a bench trial. The Village conceded that section 10(b) of the Act was satisfied, indicating that it was not contesting that, during the December 2009 incident, Heelan was responding to what he reasonably believed to be an emergency. In light of the court's prohibition of testimony regarding whether Heelan suffered a catastrophic injury under section 10(a), the Village made an offer of proof as to that issue. The Village rested its case, and Heelan moved for a directed finding, which the court granted.

¶ 12 Heelan then presented evidence to support his counterclaim. When Heelan began testifying about his belief as to the emergency nature of the December 2009 incident, the Village objected on relevance grounds in light of its concession regarding section 10(b) of the Act. The court sustained the objection and allowed Heelan to make an offer of proof. Heelan then testified about his application for, and the Board's award of, a line-of-duty disability pension. The Board's written decision also was admitted into evidence. Heelan testified that, following the award of his pension, he sought from the Village health insurance benefits under the Act. He explained that the parties agreed that, to avoid a lapse in insurance coverage during the pendency of the litigation, the Village would continue to pay the premiums for Heelan, while Heelan would pay the premiums for his family. When Heelan rested his case on his counterclaim, the Village moved for a directed finding, which the court denied. The Village presented its evidence on Heelan's counterclaim and renewed its motion for a directed finding. The court denied the Village's renewed motion and found that Heelan had sustained his proofs.

¶ 13 On March 20, 2013, the trial court entered a written order in Heelan's favor on the Village's complaint and on Heelan's counterclaim.[2] The court awarded Heelan benefits under the Act, retroactive to August 24, 2011, when the Board had issued its written decision.

---

[2]The case continued on matters not at issue in this appeal.

- 4 -

¶ 14 On May 24, 2013, Heelan filed a motion for sanctions against the Village pursuant to Supreme Court Rule 137. In his motion, Heelan argued that the Village brought its suit only to harass him and cause him unnecessary expense. According to Heelan, because the Village's complaint acknowledged both the *Krohe* decision and the fact that he had received a line-of-duty disability pension, the Village knew that he was entitled to benefits under the Act and, therefore, did not act in good faith in filing suit. The Village responded that it pursued this action in good faith because it presented unique facts and arguments not previously addressed by *Krohe* and its progeny. The Village also argued that it permissibly advocated for modification of existing law. The trial court denied Heelan's motion for sanctions, finding that the evidence indicated no bad faith by the Village. The court further found that the Village had made it clear from the beginning that it was seeking to change the law.

¶ 15 On July 18, 2013, the trial court entered its final judgment. The Village timely appeals, and Heelan timely cross-appeals. We granted the Illinois Municipal League's motion to intervene as *amicus curiae* and to file a brief in support of the Village.

¶ 16                                    II. ANALYSIS
¶ 17                               A. The Village's Appeal
¶ 18 The Village appeals from the trial court's judgment that it was obligated under the Act to provide health insurance benefits to Heelan and his family. The purpose of the Act is "to ensure the health benefits of public safety employees who have suffered career-ending injuries." *Richter*, 2011 IL App (2d) 100114, ¶ 16. Under section 10 of the Act, injured law enforcement officers and firefighters, and their families, are entitled to have their municipality pay their health insurance premiums if two conditions are satisfied. 820 ILCS 320/10 (West 2010); *Richter*, 2011 IL App (2d) 100114, ¶ 16. Section 10(a) of the Act requires the employee to have suffered a "catastrophic injury" or to have been killed in the line of duty. 820 ILCS 320/10(a) (West 2010); *Richter*, 2011 IL App (2d) 100114, ¶ 16. Section 10(b) of the Act provides in relevant part that the employee must have been injured or killed as a result of his or her "response to what is reasonably believed to be an emergency." 820 ILCS 320/10(b) (West 2010); *Richter*, 2011 IL App (2d) 100114, ¶ 16. In the trial court, the Village conceded that Heelan satisfied section 10(b). Thus, the issue before us is whether he satisfied section 10(a).

¶ 19 The Act does not define the term "catastrophic injury." In 2003, our supreme court held that the term was ambiguous. *Krohe*, 204 Ill. 2d at 395. The court considered the legislative history and debates, concluding that they "could not be clearer." *Krohe*, 204 Ill. 2d at 398. The court held that the legislature intended the term "catastrophic injury" to be "synonymous with an injury resulting in a line-of-duty disability under section 4-110 of the [Pension] Code." *Krohe*, 204 Ill. 2d at 400 (referring to 40 ILCS 5/4-110 (West 2000); this section of the Pension Code provides for line-of-duty disability pensions for firefighters and is similar to section 3-114.1, which provides for police officers' line-of-duty disability pensions); see also *Nowak*, 2011 IL 111838, ¶ 12 (supreme court reaffirming its holding in *Krohe* and applying it where a police officer was injured). Following *Krohe*, this court explained in *Richter*:

> "Under *Krohe*, the pension board's decision [to award the plaintiff-firefighter a line-of-duty disability pension] establishes that the plaintiff suffered a catastrophic injury, thus meeting the requirements of section 10(a) of [the Act]. This is not an application of collateral estoppel. Rather, because the legislature intended an injured firefighter or police officer to be eligible for benefits under section 10(a) of [the Act]

- 5 -

whenever his or her injuries were sufficient to qualify for a line-of-duty pension, the pension board's determination in this regard establishes as a matter of law that the firefighter or police officer received a catastrophic injury." *Richter*, 2011 IL App (2d) 100114, ¶ 16.

The issue of whether Heelan satisfied section 10(a) of the Act by virtue of having been awarded a line-of-duty disability pension presents a question of law, which we review *de novo*. See *Richter*, 2011 IL App (2d) 100114, ¶¶ 14, 16.

¶ 20    In the present case, it is undisputed that the Board awarded Heelan a line-of-duty disability pension. Therefore, it is an uncontroverted fact that he was catastrophically injured for purposes of section 10(a) of the Act. See *Krohe*, 204 Ill. 2d at 400; *Richter*, 2011 IL App (2d) 100114, ¶ 16. In light of the Village's concession with respect to section 10(b) of the Act, the trial court correctly entered judgment in favor of Heelan on the Village's complaint and on Heelan's counterclaim. See *Pyle v. City of Granite City*, 2012 IL App (5th) 110472, ¶ 20 (holding that the plaintiff-firefighter was entitled to benefits under the Act because the plaintiff had been awarded a line-of-duty disability pension and the parties did not dispute that his injuries occurred as a result of his response to an emergency).

¶ 21    Nevertheless, the Village argues that *Krohe*, *Richter*, and *Nowak* do not control, because the courts in those cases did not consider whether a trial court may prohibit a municipality from engaging in discovery or presenting evidence disputing that an injury was catastrophic. According to the Village, "much confusion" has resulted from *Krohe*. We disagree.

¶ 22    In *Krohe*, our supreme court addressed the question of whether the term "catastrophic injury" in section 10(a) of the Act is synonymous with an injury resulting in a line-of-duty disability pension. *Krohe*, 204 Ill. 2d at 394. The court's answer to that question was an unequivocal yes. *Krohe*, 204 Ill. 2d at 394, 400.

¶ 23    In *Richter*, this court considered the plaintiff-firefighter's contention that, after he was awarded a line-of-duty disability pension, "under the principle of collateral estoppel he ha[d] the right to judgment as a matter of law" on his claim under the Act. *Richter*, 2011 IL App (2d) 100114, ¶ 14. We explained that the doctrine of collateral estoppel "prohibits the relitigation of an issue actually decided in an earlier proceeding between the same parties." *Richter*, 2011 IL App (2d) 100114, ¶ 17. We then addressed section 10(a) of the Act. Relying on *Krohe*, we held that the pension board's awarding the plaintiff a line-of-duty disability pension established that the plaintiff had suffered a catastrophic injury under section 10(a) of the Act. *Richter*, 2011 IL App (2d) 100114, ¶ 16. Turning to section 10(b) of the Act, we held that the defendant-village was collaterally estopped (by proceedings under the Workers' Compensation Act) from relitigating the issue of whether the plaintiff's first shoulder injury was a contributing cause of his disability. *Richter*, 2011 IL App (2d) 100114, ¶ 24.

¶ 24    We agree with the Village that our analysis and holding in *Richter* regarding section 10(b) of the Act are not relevant here, because the Village conceded that element. However, we disagree with the Village's conclusion that our analysis and holding in *Richter* regarding section 10(a) was *dicta*. In *Richter*, following a bench trial, the plaintiff challenged the trial court's judgment with respect to his claim under the Act; thus, we necessarily had to address the requirements of both sections of the Act.

¶ 25    In *Nowak*, the supreme court considered the issue of when a municipality's obligation attaches under the Act. *Nowak*, 2011 IL 111838, ¶ 9. The court also clearly reaffirmed its holding in *Krohe*–that the term "catastrophic injury" as used in section 10(a) of the Act is

synonymous with an injury resulting in the award of a line-of-duty disability pension. *Nowak*, 2011 IL 111838, ¶ 12; see also *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶¶ 54-55 (reaffirming its holding in *Krohe* while addressing section 10(b)'s requirement that the injury occurred in response to what was reasonably believed to be an emergency). Indeed, the court in *Nowak* equated the determination of a catastrophic injury with the determination of eligibility for a line-of-duty disability pension. *Nowak*, 2011 IL 111838, ¶ 29 ("[A]n employer's obligation to pay the entire health insurance premium for an injured officer and his family attaches on the date that it is determined that the officer's injury is 'catastrophic'–that is, on the date it is determined that the injured officer is permanently disabled and therefore eligible for a line-of-duty disability pension.").

¶ 26    *Krohe*, *Richter*, and *Nowak* control the instant appeal. Although these cases did not address a municipality's right to conduct discovery or present evidence on the issue of whether the claimant's injury was catastrophic, they unambiguously established that the award of a line-of-duty disability pension means that the claimant suffered a catastrophic injury within the meaning of section 10(a) of the Act. Accordingly, where it is uncontroverted that a line-of-duty disability pension has been awarded, section 10(a) is satisfied, and there is no need to engage in discovery or present evidence regarding the claimant's injury.

¶ 27    We emphasize that *Krohe* and its progeny are not rooted in the doctrine of collateral estoppel. See *Richter*, 2011 IL App (2d) 100114, ¶ 16 (explaining the holding of *Krohe*, we said that "[t]his is not an application of collateral estoppel"). Although the parties here argued collateral estoppel in the trial court, Heelan now concedes that the doctrine does not apply. Nor did the trial court base its decision on collateral estoppel. Since August 24, 2012, when the trial court granted Heelan's motion to strike the depositions, the court appropriately relied on the holding from *Krohe*–that the term "catastrophic injury" is a term of art meaning an injury resulting in the award of a line-of-duty disability pension.

¶ 28    The Village nonetheless maintains that it was entitled to litigate the nature, extent, and causes of Heelan's injuries, insisting that Heelan's preexisting osteoarthritis was not work related. Within its argument that collateral estoppel does not apply, the Village asserts that "the pension board hearing did not follow the rules of evidence" and that "the facts of this case require further medical testimony." By criticizing the Board proceeding and seeking to introduce evidence regarding Heelan's injuries, the Village is in essence arguing that the Board's decision that Heelan qualified for a line-of-duty disability pension was erroneous. Despite the collateral-estoppel label that the Village attaches to its argument, we discern a collateral attack on the Board's decision.

¶ 29    "A collateral attack on a judgment is an attempt to impeach that judgment in an action other than that in which it was rendered." (Internal quotation marks omitted.) *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, 403 Ill. App. 3d 179, 188 (2010). Describing the well-established collateral-attack doctrine, our supreme court explained that, once a court of competent jurisdiction renders a judgment, it is not open to contradiction or impeachment in any collateral proceeding. *Malone v. Cosentino*, 99 Ill. 2d 29, 32 (1983). "Once a court with proper jurisdiction has entered a final judgment, that judgment can only be attacked on direct appeal, or in one of the traditional collateral proceedings now defined by statute." *Malone*, 99 Ill. 2d at 32-33 (noting that the statutory collateral proceedings were *habeas corpus* proceedings, postconviction proceedings, and section 2-1401 proceedings under the Code of Civil Procedure). The collateral-attack doctrine applies to administrative agency decisions as

well as to trial court judgments. *Board of Education of the City of Chicago v. Board of Trustees of the Public Schools Teachers' Pension & Retirement Fund of Chicago*, 395 Ill. App. 3d 735, 740 (2009) ("[A]n agency decision which is merely voidable, as opposed to void, is not subject to collateral attack.").

¶ 30    Here, because the Village does not challenge the Board's statutory authority to render its decision,[3] any attempt to dispute the sufficiency of the Board's proceeding, its factual findings, or its ultimate award of Heelan's pension would be an impermissible collateral attack on the board's decision. See *Wabash County v. Illinois Municipal Retirement Fund*, 408 Ill. App. 3d 924, 930 (2011) ("An agency decision that is erroneous and voidable is not subject to a collateral attack, whereas an agency's decision made without statutory authority is void and subject to a collateral attack." (citing *Board of Education of the City of Chicago*, 395 Ill. App. 3d at 740)); *Apollo Real Estate Investment Fund*, 403 Ill. App. 3d at 188-89 (recognizing the defendants' purported attempt to defend against collateral estoppel as a collateral attack on the foreign judgment at issue, the court held that, because the defendants did not question the foreign court's jurisdiction, they were precluded from collaterally attacking the foreign judgment).

¶ 31    Nevertheless, the Village urges that its due process rights were violated when the trial court prohibited it from conducting discovery and presenting evidence on the nature, extent, and causes of Heelan's injuries. The Village argues that, because it was neither a party nor in privity with a party in the Board proceeding, it was denied the "opportunity to litigate anything." In support of its position, the Village cites authority cautioning against "the indiscriminate application of offensive collateral estoppel" (*Herzog v. Lexington Township*, 167 Ill. 2d 288, 295 (1995)).

¶ 32    The "[r]equirements of due process are met by conducting an orderly proceeding in which a party receives adequate notice and an opportunity to be heard." *Reichert v. Court of Claims*, 203 Ill. 2d 257, 261 (2003). We review the Village's due process argument *de novo*. *People v. K.S.*, 387 Ill. App. 3d 570, 573 (2008) (explaining that, while a trial court's decision to limit discovery is generally reviewed for an abuse of discretion, an alleged denial of due process is reviewed *de novo*).

¶ 33    We reiterate: neither the trial court's judgment nor our decision affirming it is based on collateral estoppel. Given that our supreme court construed the phrase "catastrophic injury" as an injury resulting in a line-of-duty disability pension,[4] the Village's due process argument is unavailing. As explained above, where, as here, it is undisputed that an officer was awarded a line-of-duty disability pension, section 10(a) is satisfied. *Richter*, 2011 IL App (2d) 100114,

---

[3]An administrative agency decision rendered without statutory authority is analogous to a trial court order entered without subject matter jurisdiction. *Board of Education of the City of Chicago*, 395 Ill. App. 3d at 740. Such a decision would be void and subject to collateral attack in any court, at any time. *Wabash County*, 408 Ill. App. 3d at 930.

[4]In its attempt to distinguish *Krohe*, the Village cites the appellate court decision in *Krohe* (*Krohe v. City of Bloomington*, 329 Ill. App. 3d 1133, 1143 (2002) (Steigmann, J., dissenting)), without mentioning that it is citing the dissent, for the proposition that the trial court in *Krohe* did not consider the nature and extent of the plaintiff-firefighter's injury. But that is the point–the supreme court held in *Krohe* that section 10(a)'s "catastrophic injury" requirement is satisfied if a claimant was awarded a line-of-duty disability pension. Thus, the nature and extent of a claimant's injuries are not relevant to a trial court's determination of whether section 10(a) is satisfied in a declaratory judgment action.

¶ 16 (holding that the pension board's decision awarding a line-of-duty disability pension established that the firefighter suffered a catastrophic injury under section 10(a)). Therefore, the factual issues raised by the Village–the nature, extent, and causes of Heelan's injuries, as well as any preexisting osteoarthritis–were not relevant. Nothing remained to be litigated under section 10(a).

¶ 34    The Village also urges us not to follow *Krohe*, arguing that the "supreme court misinterpreted the legislative intent behind" the Act. The Village further maintains that the court in *Krohe* failed to appreciate the significance of the Act's language requiring "*a* catastrophic injury" by not considering whether the injury must result from a single occurrence. Regardless of any error or deficiency the Village perceives in *Krohe*'s reasoning, we are bound by decisions of our supreme court. See *Pyle*, 2012 IL App (5th) 110472, ¶¶ 19-20 (rejecting the municipality's arguments that *Krohe*'s definition of "catastrophic injury" did not comport with the commonly understood meaning, that *Krohe*'s reliance on legislative hearings was improper, and that *Krohe* was bad law for public policy reasons).

¶ 35                              B. Heelan's Cross-Appeal

¶ 36    Heelan contends that the trial court abused its discretion in denying his motion for Rule 137 sanctions. In relevant part, Rule 137 provides that an attorney filing a pleading or a motion must certify that, to the best of his or her knowledge, information, and belief, formed after reasonable inquiry, the pleading or motion "is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137 (eff. July 1, 2013). "The purpose of the rule is to penalize attorneys and parties who abuse the judicial process by filing frivolous or false matters without a basis in law or fact or for purposes of harassment." *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 33. "A trial court's decision whether to impose sanctions is entitled to significant deference, and we will not disturb the trial court's decision absent an abuse of discretion." *Petrik*, 2012 IL App (2d) 110495, ¶ 33. "A trial court abuses its discretion where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Petrik*, 2012 IL App (2d) 110495, ¶ 19.

¶ 37    Specifically, Heelan maintains that the Village's complaint, its response to Heelan's motion to strike the depositions, and its motion to reconsider the order striking the depositions were not warranted by a good-faith argument to extend, modify, or reverse existing law, but were instead brought to harass him and needlessly increase litigation costs. Heelan emphasizes that the Village acknowledged *Krohe* in its complaint. He also notes that he repeatedly brought *Gaffney*, *Nowak*, and *Richter* to the Village's attention during the pendency of the proceedings. As evidence of the Village's "candid display of *** disregard" for precedent, Heelan quotes the Village's attorney, from a December 2012 motion hearing: "We don't agree with the *Krohe* decision, the rationale or its applicability to the present situation." Heelan additionally urges that, given the trial court's and this court's lack of authority to overturn the supreme court's decision in *Krohe*, the Village could not have been acting in good faith to seek modification or reversal of the law.

¶ 38    The trial court found no evidence of bad faith by the Village and observed that the Village had made it clear from the beginning that it was seeking to change the law. Despite Heelan's

argument to the contrary, the Village's acknowledgment of *Krohe* throughout this litigation supports the court's finding. The quote above was excerpted from the following statement by the Village's attorney: "I mean, it's not a surprise. We don't agree with the *Krohe* decision, the rationale or its applicability to the present situation. We made that point; you made your ruling. We respect that, we understand it. But the only way you get those rulings changed is by challenging them in an appropriate forum. We've come here to do that." The court responded to counsel by stating, "I guess they have the right to do that." Heelan's attorney said, "Certainly, they do, Your Honor. I would concede that." That the court could not have overruled *Krohe* does not change the fact that it might have found that *Krohe* was distinguishable or inapposite to the due process and collateral estoppel issues raised by the Village. Furthermore, the Village had no option but to bring its claim in the trial court and, if unsuccessful, proceed up the chain of review–which is exactly what it is doing.

¶ 39    The record reveals that the Village attempted in good faith to distinguish *Krohe* and to articulate its disagreement with *Krohe*'s holding. Additionally, the Illinois Municipal League filed an *amicus* brief in support of the Village's position, on public policy grounds. We cannot say that no reasonable person would take the view adopted by the trial court, namely, that the Village brought its action in an effort to change existing law and did not act in bad faith. Accordingly, the trial court did not abuse its discretion in denying Heelan's motion for Rule 137 sanctions. See *McClaughry v. Village of Antioch*, 296 Ill. App. 3d 636, 645 (1998) ("A court should not impose [Rule 137] sanctions on a party who presents objectively reasonable arguments for his position, regardless of whether the arguments are deemed to be unpersuasive or incorrect.").

¶ 40                                III. CONCLUSION

¶ 41    For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

¶ 42    Affirmed.

¶ 43    JUSTICE McLAREN, dissenting.

¶ 44    The "sole issue" in *Krohe* was whether the phrase " 'catastrophic injury' " is "synonymous with an injury resulting in a line-of-duty disability." *Krohe*, 204 Ill. 2d at 394. The supreme court decided that it is. But that is all that the supreme court decided in *Krohe*. It did not, as the majority claims, hold "that section 10(a)'s 'catastrophic injury' requirement is satisfied if a claimant was awarded a line-of-duty disability pension." *Supra* ¶ 33 n.4. Further, nowhere did *Krohe* hold, as the majority does now, that a pension board's award of a line-of-duty disability pension is irrefutable proof of a catastrophic injury under section 10(a) of the Act in a declaratory judgment proceeding in a trial court.

¶ 45    Yet that is the meaning and effect that the majority here ascribes to *Krohe*. It takes the answer to that "sole issue" of the meaning of an ambiguous phrase and transforms it into a rule of law affecting civil procedure, evidence, burdens of proof, and due process.

¶ 46    The majority finds that *Krohe*, *Richter*, and *Nowak* control this case. *Supra* ¶ 26. Indeed, the first misstep onto this path of misapplying *Krohe* occurred in *Richter*, where this court stated that, "[u]nder *Krohe*, the pension board's decision establishes that the plaintiff suffered a catastrophic injury, thus meeting the requirements of section 10(a) of [the Act]." *Richter*, 2011

IL App (2d) 100114, ¶ 16. The second misstep is the majority here referring to *Nowak* as controlling. The parties in *Nowak* agreed "that plaintiff suffered a catastrophic injury in the line of duty" and "that, in light of that injury, the City is obligated under section 10(a) to pay the entire health insurance premium for plaintiff and his family." *Nowak*, 2011 IL 111838, ¶ 9. The "sole point of contention" of the case was *when* the city's obligation under section 10 attached. *Id*. *Nowak* is of no real guidance, let alone controlling.

¶ 47        The majority now holds, in essence, that a pension board is the *de facto* finder of fact as to section 10(a) of the Act. Although the majority states that, because "it is undisputed that the Board awarded Heelan a line-of-duty disability pension" "it is an uncontroverted fact that he was catastrophically injured for purposes of section 10(a)" (*supra* ¶ 20), the true meaning of the majority holding is that it is an *incontrovertible* fact. So long as a pension board has issued an order granting a line-of-duty disability pension, a trial court, in a different proceeding with different parties, has no authority to hear any evidence as it applies to determining a "catastrophic injury" under section 10(a). The majority holds that the trial court, in an independent proceeding, must take judicial notice of the pension board's finding *and* consider it as irrefutable proof.

¶ 48        Due process "entitles a litigant to have all the evidence submitted to a single judge who can see the witnesses testify and, thus weigh their testimony and judge their credibility." *Smith v. Freeman*, 232 Ill. 2d 218, 223 (2009).[5] Findings of fact based on the demeanor of witnesses should be made by the judge who observed the witnesses. *Anderson v. Kohler*, 376 Ill. App. 3d 714, 720 (2007).

¶ 49        A litigant in a trial court is entitled to have the merits of his case decided by the trial court. Due process is not served when findings of fact and conclusions of law of a different tribunal, with no subject matter jurisdiction over the issue raised, in a different case in which the litigant was not a party and in which the litigant had no right to intervene, are binding on the trial court such that the litigant cannot contest the cause of action, demand strict proof thereof, obtain discovery, present evidence, have the trial court determine the credibility of the witnesses and the weight to be accorded to their testimony, and generally defend against judgment being entered against it.

¶ 50        Our supreme court long ago stated:

> "In *Atchinson, Topeka and Santa Fe Railway Co. v. Commerce Com.*, *supra*, we held that the statement of one tribunal of a particular fact in a case before it is no evidence in another controversy upon a different issue between different parties in another tribunal of the particular fact stated, and that the commissioners cannot act on their own information but must base their findings on evidence presented in the case." *Moline Consumers Co. v. Illinois Commerce Comm'n ex rel. Chicago, Burlington & Quincy R.R. Co.*, 353 Ill. 119, 129 (1933).

The majority does not explain why the findings of an administrative agency can (or should) be binding on a trial court in a separate proceeding with different parties regarding matters that the administrative agency has no statutory authority to decide. Administrative agencies are limited to the powers granted to them by the legislature. See *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 38 ("An administrative agency has no

---

[5]*Smith* involved the issue of whether parties could agree or stipulate to allow a successor judge to decide a case based on written evidence received by a predecessor judge.

general or common law powers. *Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547, 553 (2005). Rather, an agency's powers are limited to those granted by the legislature and any action must be specifically authorized by statute. *Alvarado*, 216 Ill. 2d at 553."). To my knowledge, there is no authority, statutory or otherwise, that grants power to a pension board to bind a trial court. A pension board's decision to deny a disability pension to a claimant firefighter does not prevent a board of commissioners from deciding that the same claimant should be discharged because of a disability. See *Dowrick v. Village of Downers Grove*, 362 Ill. App. 3d 512, 521 (2005). I see no reason why a pension board's decision should have more power over a trial court than it does over another administrative agency.

¶ 51    In cases of administrative review, an administrative agency's decision is not beyond review. Its findings and conclusions on questions of fact are deemed *prima facie* true and correct but are still reviewed under the manifest-weight-of-the-evidence standard. *Peacock v. Board of Trustees of the Police Pension Fund*, 395 Ill. App. 3d 644, 652 (2009). An agency's interpretation of a statute, regulation, or rule connected with the agency is considered relevant but not binding (*City of St. Charles v. Illinois Labor Relations Board*, 395 Ill. App. 3d 507, 509 (2009)), and its decision on a question of law is not binding but reviewed *de novo* (*Wolin v. Department of Financial & Professional Regulation*, 2012 IL App (1st) 112113, ¶ 19). Even an agency's credibility determinations are not beyond review; while such a determination is to be "afforded considerable weight," the deference afforded " 'is not boundless.' " *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 465 (2009) (quoting *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 507 (2007)). I am aware of neither authority nor rationale for validating a pension board's award of a pension as irrefutable proof of an element of a cause of action in a trial court proceeding involving a different party and different issues *except when it was agreed to by the parties in the trial court.* See, *e.g.*, *Gaffney*, 2012 IL 110012, ¶ 54 (both plaintiffs were awarded line-of-duty disability pensions, and "[t]he defendants agree that the requirements of subsection (a) have been met in this case"); *Nowak*, 2011 IL 111838, ¶ 9 (board awarded line-of-duty disability pension and "[t]he parties here agree that plaintiff suffered a catastrophic injury in the line of duty"). *Springborn v. Village of Sugar Grove*, 2013 IL App (2d) 120861, presented an interesting situation: although the defendants therein did "not dispute in these appeals that Springborn and Cecala suffered 'catastrophic injuries' " (*id.* ¶ 25), there is no mention of whether either plaintiff was awarded a line-of-duty disability pension.[6]

¶ 52    The majority's due process analysis is wholly inadequate. The majority finds the Village's due process claim "unavailing" (*supra* ¶ 33) and states that due process requires only "an orderly proceeding in which a party receives adequate notice and an opportunity to be heard" (internal quotation marks omitted) (*supra* ¶ 32). However, the majority fails to identify any proceeding at which the Village had notice and an opportunity to be heard regarding the evidence of a catastrophic injury. It is this evidence upon which the Village's liability for the insurance premiums is based. The majority's statement might make sense if the Village were attempting to abrogate the pension. However, that is not the case. The Village is seeking to

---

[6]At least we are told that plaintiff Springborn applied for a pension, as "his testimony from two appearances before the Board of Trustees for the Police Pension Fund of Sugar Grove" was attached to the parties' cross-motions for summary judgment. *Id.* ¶ 7. No mention is made of any pension application by plaintiff Cecala.

avoid liability for the health insurance premiums; it is not attempting to affect the Board's decision.

¶ 53    The Village was not a party before the Board and had no right to be a party. A municipality currently does not have a right to intervene in such a case, although a pension board has the discretion to permit such an intervention. See *Williams v. Board of Trustees of the Morton Grove Firefighters' Pension Fund*, 398 Ill. App. 3d 680, 688-89 (2010). However, a board's decision to deny a municipality's request to participate in a pension hearing has been found not to be an abuse of discretion. See *Village of Stickney v. Board of Trustees of the Police Pension Fund of the Village of Stickney*, 347 Ill. App. 3d 845, 852 (2004). Unless the majority's opinion is overturned, it would behoove municipalities to seek to intervene in pension cases *as a matter of right* in order to protect their financial interests, since a pension board's grant of a line-of-duty disability pension is now deemed to be irrefutable proof in any other tribunal. However, any future attempt at intervention could create numerous problems dealing with the due process rights of all concerned participants.[7] Even when a municipality intervenes in a proceeding, unless all evidence is presented to and issues are disposed of by the same trier of fact, the proceeding does not comport with due process.

¶ 54    I also question the majority's discernment of a collateral attack on the Board's decision granting the pension. See *supra* ¶ 28. A collateral attack "is an attempt to impeach or deny effect to an order in some proceeding not provided by law for the express purpose of attacking it." *Thomas v. Sklodowski*, 303 Ill. App. 3d 1028, 1033 (1999) (citing 46 Am. Jur. 2d *Judgments* § 519 (1994)). The Village's complaint for declaratory judgment did not seek to impeach or deny effect to the Board's decision; had the Village succeeded on its complaint, the decision granting the line-of-duty disability pension would have remained intact. The only relief sought was a declaration that the Village did not have to pay the health insurance premiums–an issue that the Board clearly had no statutory authority to decide, raised by a party over which the Board had no personal jurisdiction.

¶ 55    In addition, since the Village never participated in the Board proceeding, it is difficult to understand how the Village's action is collateral. In attempting to define a collateral attack, the majority quotes from *Apollo Real Estate Investment Fund* (see *supra* ¶ 29) but somehow misses this part of the explanation:

> "Under the collateral attack doctrine, a final judgment rendered by a court of competent jurisdiction may only be challenged through direct appeal or procedure allowed by statute and remains binding *on the parties* until it is reversed through such a proceeding." (Emphasis added.) *Apollo Real Estate Investment Fund*, 403 Ill. App. 3d at 189.

The majority is correct in stating that collateral estoppel provides no basis for its decision. *Supra* ¶ 33. "Collateral estoppel is applicable only where the issue decided in the prior adjudication is identical with the one presented in the suit in question, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402, ¶ 42. It is axiomatic that someone not a party or in

---

[7]See *Williams*, 398 Ill. App. 3d at 690 (wherein the municipality was allowed to intervene, but aspects of its intervention were deemed to raise a conflict of interest resulting in a violation of due process).

privity with a party in a proceeding is not bound by the judgment in that proceeding, as was determined to be the case on similar facts in *Pedersen*. See *id*. ¶¶ 45-47. However, the majority then fails to explain how a final judgment of the Board can be binding on the Village, a nonparty to the proceeding before the Board that is not challenging the Board's judgment. Without some form of privity, personal jurisdiction, or prior involvement, it would appear that the Village's declaratory judgment action is a case of first impression as to the rights, duties, and liabilities at issue between the Village and Heelan. See *Lewis v. Blumenthal*, 395 Ill. 588, 594 (1947) (*res judicata* and collateral attack would apply only in a case where the trial court had subject matter and personal jurisdiction over the parties and their privies).

¶ 56     The majority seems unwilling to countenance the possibility of "inconsistent verdicts." But that sometimes happens when different tribunals, considering (possibly) different evidence presented by different parties, make decisions regarding different causes of action. See, *e.g.*, *Dowrick*, 362 Ill. App. 3d at 521; *Edwards v. Addison Fire Protection District Firefighters' Pension Fund*, 2013 IL App (2d) 121262, ¶ 38 (citing *Dowrick* and finding that it was not "incongruous" that the claimant "could be found unfit for duty because of a latex sensitivity yet be found ineligible for a pension based on the same physical infirmity"). Certainly, the legislature must have been aware of such a potentiality when it assigned to pension boards the power to grant line-of-duty disability pensions but declined to assign to the boards the power to order the payment of health insurance premiums under section 10 of the Act.

¶ 57     The majority's position also leads to implications that the majority fails to acknowledge. If "the award of a line-of-duty disability pension means that the claimant suffered a catastrophic injury within the meaning of section 10(a) of the Act" (*supra* ¶ 26), the converse must also be true: if the pension board *denies* an application for a line-of-duty disability pension, that denial means that the claimant did *not* suffer a catastrophic injury within the meaning of section 10(a) of the Act. Such a claimant would be precluded from presenting any evidence in the trial court in an attempt to seek the payment of health insurance premiums under the Act, based upon a catastrophic injury (which has not been adjudicated in any prior proceeding, especially one in which the municipality was a party). Such an attempt might even be deemed frivolous, considering the telling effect that the majority ascribes to pension board decisions regarding line-of-duty disability pensions. Simply put, neither party should be precluded from contesting a declaratory judgment claim, because the claim is the first instance of litigation between the parties as to the issue.

¶ 58     The determination of whether an issue has been raised and considered in a prior proceeding has been described as follows:

> " 'In determining whether an issue has been raised and considered in a prior proceeding reference may be had to "pleadings, testimony, jury instructions, findings, verdicts, and any other pertinent sources of information sensibly helpful to the inquiry." "Res Judicata Reexamined," Cleary, 57 Yale Law Journal, 339, 342. Harman v. Auditor of Public Accounts, 123 Ill 222.'
>
> This determination does not depend upon technicalities but on broad principles of justice, and it can apply only when the party has had his day in Court and full opportunity to establish his claim. Voorhees v. Chicago & A. R. Co., 208 Ill App 86, 95 (3rd Dist. 1917). The doctrine is based upon the principle that while every man is entitled to his day in court and full opportunity to sustain his position on the issues of fact involved, he is not given the right to litigate a matter twice. 'It is of first importance

both in the observance of private rights and the public good that a question once adjudicated by a court of competent jurisdiction shall be considered as finally settled and conclusive on the parties, subject only to proceedings in a court of review.' Winkelman v. Winkelman, 310 Ill 568, 573, 142 NE 173 (1924)." *Chas. Ind Co. v. Cecil B. Wood, Inc.*, 56 Ill. App. 2d 30, 38 (1965).

There is nothing in this record to suggest that the Village ever had a prior opportunity to have its day in court. Until it does, I will continue to dissent.