In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-3308

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff*,

*v.*

FIRST CHOICE MANAGEMENT SERVICES, INC., *et al.*,

*Defendants.*

SONCO HOLDINGS, LLC,

*Intervenor-Appellant*,

*v.*

JOSEPH D. BRADLEY, Receiver, and
ALCO OIL & GAS CO., LLC,

*Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:00-cv-00446-RLM-CAN—**Robert L. Miller, Jr.**, *Judge.*

ARGUED JANUARY 23, 2013—DECIDED MARCH 1, 2013

Before POSNER, RIPPLE, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* This appeal is a sequel to an appeal in the same case that we decided last year. 678 F.3d

538 (7th Cir. 2012). The case had begun in 2000 as a suit by the SEC charging First Choice and others with fraud in violation of federal securities law. The district court had appointed a receiver to take charge of the defendants' assets and distribute them among the victims of the $31 million fraud. The receiver went hunting for the assets and found that some of them had been used to acquire oil and gas leases in Texas. SonCo Holdings claimed an interest in the leases. The claim delayed the receiver's sale of the assets, but in January 2010, after protracted negotiations, SonCo made a deal with the receiver pursuant to which the district court issued an "agreed order" that required SonCo to pay the receiver $580,000 (later upped to $600,000 because of SonCo's delay in paying) for a quitclaim assignment of the leases in which it claimed an interest. The parties also agreed to release each other from all claims and counterclaims in a parallel Canadian class action—*Eaton v. HMS Financial*—in which SonCo and its principal were alleged to have misappropriated funds belonging to the defrauded investors.

A third party to the agreed order was Alco Oil & Gas, the operator of the leased wells. (The operator is the firm or individual legally permitted to extract minerals pursuant to an oil or gas lease. It is regulated by the Texas Railroad Commission and can be, and in this instance was, separate from the lessee.) Alco had had to post a $250,000 cash bond with the Texas Railroad Commission to assure payment of any costs that the Commission might impose on it for failing as operator to conserve oil and gas and prevent or remedy environ-

mental damage from its operations. See Texas Natural Resources Code §§ 91.103, .104, .1041, .1042, .105, .142. Alco could get its $250,000 back only if it was replaced as operator and the new operator posted an equivalent bond. The receiver wanted Alco replaced because the $250,000 for its bond had come in part from the defrauded investors (though there is no suggestion that Alco was guilty of any wrongdoing). So the agreed order required SonCo to "obtain a bond . . . that shall replace Alco's bond so that Alco and the Receiver may obtain the release of its bond paid for with defrauded investor funds." Thus the $250,000 would not stop with Alco if it ceased to be the operator of the wells—not all $250,000 at any rate. Some (we've not been told how much) would be added to the receiver's assets because it had come from victims of the fraud.

Alco *wanted* to be replaced as operator—wanted desperately because it was incurring mounting liabilities to the Texas Railroad Commission and perhaps to other entities as well for environmental damage caused by the wells, and it had little prospect of generating off-setting revenues. The agreed order therefore not only required SonCo to replace Alco's $250,000 bond but also—according to the interpretation of the order proposed by the receiver and Alco, adopted by the district judge, and accepted by us in rejecting SonCo's previous appeal, see 678 F.3d at 543—required SonCo to do whatever had to be done to enable it to replace Alco as the operator of the wells. The replacement would require the permission of the Texas Railroad Commission but the grant of that permission was expected to be

pro forma—provided that SonCo filed the necessary papers and demonstrated, presumably by posting the replacement bond, its financial ability to shoulder the costs of the environmental liabilities to which the operator would be subject.

SonCo failed, within the generous final deadline imposed by the district judge after he had granted multiple extensions of earlier deadlines, to obtain the Commission's authorization to operate the wells. It had applied for that authorization—but only at the last minute and its application had been incomplete. It was apparent that SonCo had never intended to become the operator. (Its motives in claiming an interest in the wells in the first place remain murky, as does its motive for pursuing this appeal, since the receiver had only $41,350 available for distribution as of December 10, 2012, and is likely to have even less by now. SonCo claims that it's looking to encumber another oil and gas lease the receiver may obtain, but currently doesn't have, if the sanction order is reversed; we warn SonCo against harassing the receiver.)

On motion by the receiver and Alco, the district judge held SonCo in civil contempt of the 2010 agreed order and as a sanction ordered it to return the leases to the receiver. But rather than ordering a simple rescission, which would have restored the parties to the status quo before the agreed order, the judge allowed the receiver to keep the $600,000 that SonCo had paid the receiver for them. SonCo returned the leases as ordered but appealed the contempt order. It wanted the $600,000 that

it had paid for the leases returned to it. We upheld the finding of civil contempt but remanded with respect to the sanction—the refusal to order the receiver to return the $600,000.

The justification that the district judge had offered was that "that money must be used to compensate the attorneys for Alco and the Receiver . . . [and] also . . . to compensate Alco for the harms caused by SonCo's non-compliance with [the agreed order] . . . . Those uses of the $600,000 will make the Receiver and Alco whole and will replenish funds that should have been returned to defrauded investors but instead have been dipped into as a result of SonCo's contempt of court."

A judge has to justify the amount of a monetary sanction that he imposes for a contempt. *FTC v. Trudeau*, 579 F.3d 754, 770 (7th Cir. 2007); *FTC v. Kuykendall*, 371 F.3d 745, 763 (10th Cir. 2004) (en banc). If as in this case the judge intends the sanction (perhaps better termed "remedy") to be compensatory rather than punitive, he has to explain, as we noted in our previous opinion, 678 F.3d at 545, what loss the sanction is intended to compensate for; and he had not done that, which is why we remanded. On remand the judge sought to justify the award, and SonCo has again appealed.

SonCo argues that the district judge denied it due process by failing to grant its request for an evidentiary hearing on remand. But as the judge explained, there was no need for such a hearing. "The due process clause does not require a hearing…where there is no disputed issue of material fact to resolve." *Wozniak v. Conry*, 236

F.3d 888, 890 (7th Cir. 2001). The $600,000 sanction was based on evidence of the costs caused by SonCo's delay that had been presented earlier in this protracted proceeding (now in its thirteenth year). While insisting that it was not in contempt, SonCo had presented no evidence contesting the receiver's $600,000 estimate of the costs imposed by its dilly-dallying, despite being given multiple opportunities by the district judge to do so.

And as the judge explained and the appellees have demonstrated at length, $600,000 is a gross underestimate of the harm caused by SonCo's contempt. SonCo had agreed as part of the "agreed order" to take over the operation of Alco's wells within 90 days. By failing to do so for more than a year after the order was issued, SonCo exposed Alco to an estimated $490,000 to $780,000 in additional environmental compliance costs because the Texas Railroad Commission refused to authorize operation of the wells without costly rehabilitation, and, left nonproducing, the wells had to be capped as otherwise they would have continued to cause environmental damage for which Alco, as their operator, would have been liable. In addition, SonCo had agreed in the order to replace the $250,000 bond that Alco had been required to post with its own $250,000 bond, and it had not done so. Furthermore, as part of the agreed order the receiver had released either $375,000 or $2 million (the record is unclear on which figure is correct) in claims of fraud and disgorgement that had been lodged against SonCo in *Eaton v. HMS Financial*. The receiver has also charged $70,000 in addi-

tional receivership fees because SonCo's procrastination prolonged the receivership. And he has incurred a further $30,000 in expenses of overseeing the property in receivership during the period of procrastination. The harm inflicted by the contempt exceeded $600,000 by a large margin. A plausible estimate of the total harm would be $2 million. SonCo has gotten off lightly.

The district judge remarked SonCo's "record of truly brazen intransigence" in this protracted proceeding. That is an understatement. SonCo will be courting additional sanctions, of increasing severity, if it does not desist forthwith from its obstructionist tactics.

AFFIRMED.