# Illinois Official Reports

## Supreme Court

*Village of Vernon Hills v. Heelan*, 2015 IL 118170

| | |
|---|---|
| Caption in Supreme Court: | VILLAGE OF VERNON HILLS, Appellant, v. WILLIAM J. HEELAN, Appellee. |
| Docket No. | 118170 |
| Filed | September 24, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Lake County, the Hon. Margaret J. Mullen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Keith L. Hunt and Bradley E. Faber, of Hunt & Associates, P.C., of Chicago, for appellant. |
| | Charles W. Smith, of Smith, LaLuzerne & Hartman, Ltd., of Waukegan, for appellee. |
| | Roger Huebner, of Springfield, and James J. Powers, of Rosemont, for *amicus curiae* Illinois Municipal League *et al*. |
| Justices | JUSTICE FREEMAN delivered the judgment of the court, with opinion. |
| | Chief Justice Garman and Justices Thomas, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1      Defendant, William J. Heelan, was awarded a line-of-duty disability pension (40 ILCS 5/3-114.1 (West 2010)) by the Board of Trustees of the Vernon Hills Police Pension Fund (Board). Plaintiff, the Village of Vernon Hills (Village), filed a complaint for declaratory relief against Heelan in the circuit court of Lake County. The Village sought a declaration that it was not obligated to pay the health insurance premium for Heelan and his family pursuant to section 10 of the Public Safety Employee Benefits Act (Act). 820 ILCS 320/10 (West 2010). The circuit court entered judgment in favor of Heelan.

¶ 2      A divided panel of the appellate court affirmed. 2014 IL App (2d) 130823. This court allowed the Village's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Jan. 1, 2015). We now affirm the judgment of the appellate court.

¶ 3                                I. BACKGROUND

¶ 4      On December 9, 2009, Heelan was a police officer who had been employed by the Village of Vernon Hills for approximately 20 years. While responding to an emergency call, Heelan slipped on ice and fell on his right side. He was taken by ambulance to a hospital emergency room. Heelan was diagnosed as having a back spasm, a shoulder sprain, and a hip contusion. He was prescribed pain medication and released. On December 22, 2009, an MRI (magnetic resonance imaging) scan was taken of Heelan's right hip.

¶ 5      In January 2010, Dr. Jay Levin conducted an independent medical evaluation of Heelan,[1] which he reviewed in a February 2010 report. Dr. Levin concluded that Heelan's MRI revealed preexisting, significant osteoarthritis. Observing that Heelan had no hip complaints prior to his injury, Dr. Levin opined that the December 2009 injury had aggravated Heelan's preexisting right hip osteoarthritis. In April 2010, Heelan underwent a right hip replacement. For the next two months he worked light duty. In June 2010, Dr. Levin examined Heelan and prepared a report. Heelan complained of left hip pain. Testing revealed long-standing left hip osteoarthritis. In an August 2010 follow-up report, Dr. Levin clarified that Heelan's MRI showed preexisting osteoarthritis of both hips. Dr. Levin concluded in both reports that Heelan's left hip osteoarthritis was aggravated by his right hip replacement, which in turn was related to his injury. In September 2010, Heelan underwent a left hip replacement. He did not return to work.

¶ 6                                A. Board Hearing

¶ 7      In December 2010, Heelan applied for a line-of-duty disability pension pursuant to section 3-114.1 of the Illinois Pension Code (40 ILCS 5/3-114.1 (West 2010)).[2] On June 28, 2011, the

---

[1]Shortly after his injury, Heelan filed a workers' compensation claim, and Dr. Levin examined Heelan in relation thereto. In March 2012, Heelan and the Village settled for a lump sum. Also, during the year following his injury, the Village paid Heelan his full salary pursuant to the Public Employee Disability Act (5 ILCS 345/1 (West 2010)).

[2]A line-of-duty disability pension is paid to a police officer who, "as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service." 40 ILCS 5/3-114.1(a) (West 2010).

Board held a hearing on Heelan's application. The report of proceedings listed the appearances of Heelan's counsel, the Board's counsel, and individual Board members, and listed the Village manager and the attorney for the Village as "also present" at the hearing. The Board admitted into evidence the reports of three Board-selected physicians: Drs. Joseph Meis, Joshua Jacobs, and Thomas Gleason. The Board also heard live testimony from Heelan and telephone testimony from Dr. Gleason. After considering the evidence, the Board determined that Heelan qualified for a line-of-duty disability pension. On August 24, 2011, the Board adopted its written findings and decision and granted Heelan a line-of-duty disability pension. However, the Village neither petitioned to intervene in the proceeding nor otherwise objected to the Board's decision. A few days later, Heelan sent a letter to the Village in which he claimed that, based on his line-of-duty disability award and pursuant to the Act, the Village was responsible for paying the health insurance premium for himself and his dependents.

¶ 8                                    B. Instant Declaratory Judgment Action

¶ 9        On September 22, 2011, the Village filed a complaint seeking a declaratory judgment that it was not responsible for paying the health insurance premium for Heelan and his family pursuant to the Act.[3] The Village alleged that he did not meet the statutory requirements of suffering a catastrophic injury (820 ILCS 320/10(a) (West 2010)) and of having an injury that resulted from his response to what he reasonably believed to be an emergency (820 ILCS 320/10(b) (West 2010)). The Village acknowledged this court's holding in *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 400 (2003), that a catastrophic injury is synonymous with an injury resulting in a line-of-duty disability pension. However, the Village alleged that "the facts and circumstances of Mr. Heelan's disability application are readily distinguishable from those in *Krohe*." Heelan answered the complaint and filed a counterclaim for a declaratory judgment that the Village was obligated to pay his health insurance premiums pursuant to section 10 of the Act.[4]

¶ 10       The Village filed notices of deposition of Drs. Levin, Meis, Jacobs, and Gleason. Relying on *Krohe* and its progeny, the circuit court granted Heelan's motion to strike the depositions. Heelan thereafter filed a motion *in limine* to bar any testimony on the issue of whether he had suffered a catastrophic injury pursuant to section 10(a) of the Act. Heelan contended that, pursuant to *Krohe*, the Village was prohibited from denying that he suffered a catastrophic injury. The court granted Heelan's motion *in limine*.

¶ 11       On March 18, 2013, the Village made an offer of proof on the issue of whether Heelan suffered a catastrophic injury under section 10(a) of the Act. The offer of proof included the record of the Board proceedings; evidence that was before the Board, including the reports of Drs. Meis, Jacobs, and Gleason; Heelan's medical records, including the reports of Dr. Levin; and Heelan's employment records and performance review. The Village conceded that Heelan was responding to what he reasonably believed to be an emergency, thereby satisfying section 10(b) of the Act.

---

[3]According to a written stipulation, Heelan and the Village agreed that, during the pendency of the litigation, the Village would continue to pay the employer portion of the health insurance premium for Heelan and his family, while Heelan would pay the Village the employee portion.

[4]In his counterclaim, Heelan also sought attorney fees. See 705 ILCS 225/1 (West 2010). The circuit court dismissed this claim with prejudice, and Heelan did not appeal therefrom.

¶ 12    The cause proceeded to a bench trial. The circuit court granted Heelan's motion for a directed finding that the Village failed to establish that Heelan was not entitled to the Act's health insurance benefit. In support of his counterclaim, Heelan testified that he was awarded a line-of-duty disability pension and that he sought the Act's health insurance benefit from the Village. The circuit court concluded that Heelan was "entitled to his [Act] benefits because he has shown catastrophic injury by way of showing that he received a line-of-duty pension, and there's a stipulation that he was responding to an emergency." The court subsequently entered a written order in favor of Heelan on the Village's complaint and on Heelan's counterclaim.

¶ 13    The Village appealed from the circuit court's judgment that it was obligated under the Act to pay the health insurance premium for Heelan and his family. A divided panel of the appellate court affirmed. 2014 IL App (2d) 130823. The court noted the Village's concession that Heelan satisfied section 10(b) of the Act, and concluded that Heelan also satisfied section 10(a). The court reasoned that Heelan was "catastrophically injured" for purposes of section 10(a) because the Board awarded him a line-of-duty disability pension. *Id*. ¶¶ 20-26. The Village claimed a due process deprivation, contending that it was denied the opportunity to litigate the nature, extent, or causation of Heelan's injuries. The appellate court rejected this argument, reasoning that since Heelan was awarded a line-of-duty disability pension, "[n]othing remained to be litigated under section 10(a)." *Id*. ¶¶ 31-33. The dissenting justice contended that the Village was denied due process because there was no proceeding of which the Village had notice and where the Village had an opportunity to be heard regarding the evidence of catastrophic injury. *Id*. ¶¶ 44-53 (McLaren, J., dissenting).[5]

¶ 14    The Village now appeals to this court. We granted the Illinois Municipal League and the Illinois Public Employer Labor Relations Association leave to submit an *amicus curiae* brief in support of the Village. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). Additional pertinent background will be discussed in the context of our analysis.

¶ 15                                    II. ANALYSIS

¶ 16    The Village (a) disagrees with this court's construction of the phrase "catastrophic injury" in section 10(a) of the Act, which (b) allegedly denies the Village procedural due process.

¶ 17                          A. Meaning of "Catastrophic Injury"

¶ 18    We first address the Village's invitation to revisit this court's definition of "catastrophic injury" as used in section 10(a) of the Act. The construction of a statute is a question of law that is reviewed *de novo*. *In re Andrew B.*, 237 Ill. 2d 340, 348 (2010); *Williams v. Staples*, 208 Ill. 2d 480, 487 (2004).

¶ 19    The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 14; *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23. When a court construes a statute and the legislature does not amend it to supersede that judicial gloss, we presume that the legislature has acquiesced in the court's exposition of legislative intent.

_____

[5]The circuit court also denied Heelan's motion for sanctions pursuant to Rule 137 (Ill. S. Ct. R. 137 (eff. Jan. 4, 2013)). Heelan cross-appealed from the denial, and the appellate court affirmed. 2014 IL App (2d) 130823, ¶¶ 35-39. This issue is not before us.

*People v. Coleman*, 227 Ill. 2d 426, 438 (2008); *Miller v. Lockett*, 98 Ill. 2d 478, 483 (1983). "Furthermore, after this court has construed a statute, that construction becomes, in effect, a part of the statute and any change in interpretation can be effected by the General Assembly if it desires so to do." *Mitchell v. Mahin*, 51 Ill. 2d 452, 456 (1972); accord *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 343 (2008) (and cases cited therein).

¶ 20 The purpose of section 10 of the Act is to continue the provision of employer-sponsored health insurance coverage for public safety employees and the families of public safety employees who are either killed or "catastrophically injured" in the line of duty. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 16. Section 10(a) of the Act provides in relevant part:

> "(a) An employer who employs a full-time law enforcement *** officer *** who *** suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the age of majority ***." 820 ILCS 320/10(a) (West 2010).

As earlier noted, the Village concedes that Heelan satisfied section 10(b) of the Act, which requires that the employee must have been injured or killed as a result of his or her "response to what is reasonably believed to be an emergency." 820 ILCS 320/10(b) (West 2010).

¶ 21 In *Krohe v. City of Bloomington*, 204 Ill. 2d 392 (2003), the sole issue presented was the correct construction of the phrase "catastrophic injury" in section 10(a) of the Act. We observed that "although the legislature made section 10(a)'s application contingent upon the existence of a 'catastrophic injury,' the Act nowhere defines 'catastrophic injury.' " *Id.* at 395. We concluded that the phrase was ambiguous, and considered the Act's legislative history and debates in ascertaining the intent of the legislature. *Id.* at 395-98. Concluding that "the legislative history and debates could not be clearer" (*id.* at 398), "we construe[d] the phrase 'catastrophic injury' as synonymous with an injury resulting in a line-of-duty disability." *Id.* at 400.

¶ 22 Citing this last-quoted passage from *Krohe*, the Village contends that "this court did not hold that receipt of a line-of-duty disability pension automatically entitled an injured party to [Act] benefits or that the granting of a line-of-duty disability pension by a pension board necessarily satisfied the elements of proof required under section 10(a) of the Act." In other words, according to the Village, "*Krohe* did not equate the two concepts" in the sense that proof of a line-of-duty disability pension "irrefutably" establishes a catastrophic injury under section 10(a) of the Act "as a matter of law."

¶ 23 However, that is exactly what this court held in *Krohe* and subsequent cases. In *Nowak*, this court explained that " 'catastrophic injury' is a term of art, and it means an injury that results in the awarding of a line-of-duty disability pension." *Nowak*, 2011 IL 111838, ¶ 12 (citing *Krohe*, 204 Ill. 2d at 398-400). We held as follows:

> "[W]e conclude that, under section 10(a) of [the Act], an employer's obligation to pay the entire health insurance premium for an injured officer and his family attaches on the date that it is determined that the officer's injury is 'catastrophic'—that is, on the date it is determined that the injured officer is permanently disabled and therefore eligible for a line-of-duty disability pension." *Nowak*, 2011 IL 111838, ¶ 29.

In *Nowak* we expressly equated the determination of a catastrophic injury with the award of a line-of-duty disability pension. Later, in *Gaffney v. Board of Trustees of the Orland Fire*

*Protection District*, 2012 IL 110012, the parties agreed that the public safety employee had met the requirements of section 10(a). Citing *Krohe*, we noted the employee's allegation that he was awarded a line-of-duty pension as a result of his injury. Thus, it was undisputed that the employee suffered a catastrophic injury within the meaning of section 10(a) of the Act. *Id.* ¶ 54.

¶ 24 The Village alternatively contends that the instant facts are distinguishable from those in *Krohe* and its progeny. The Village observes that the above-discussed case law merely equated the definition of a catastrophic injury with the definition of a line-of-duty disability pension. The Village notes that this court in *Krohe* never discussed the nature, extent, or cause of Krohe's injuries. Further, this court did not address whether the city was entitled to litigate those issues in that declaratory judgment action. According to the Village, *Krohe* and its progeny did not hold that the Village was barred from taking discovery or presenting evidence on the issue.[6] We disagree.

¶ 25 The appellate court correctly viewed this court's precedent as controlling. 2014 IL App (2d) 130823, ¶ 26. Pursuant to *Krohe*, a pension board's award of a line-of-duty disability pension establishes that the public safety employee suffered a catastrophic injury as required by section 10(a) of the Act. Because the legislature intended an injured public safety employee to be eligible for benefits under section 10(a) of the Act whenever his or her injuries were sufficient to qualify for a line-of-duty disability pension, the pension board's award establishes *as a matter of law* that the public safety employee suffered a catastrophic injury. See *Richter v. Village of Oak Brook*, 2011 IL App (2d) 100114, ¶ 16. In the case at bar, the appellate court concluded: "Accordingly, where it is uncontroverted that a line-of-duty disability pension has been awarded, section 10(a) is satisfied, and there is no need to engage in discovery or present evidence regarding the claimant's injury." 2014 IL App (2d) 130823, ¶ 26. We agree and so hold.

¶ 26 Finally, the Village contends that section 10(a) of the Act was "certainly never intended to give lifetime insurance benefits, on top of a 65% disability pension (tax free) plus a new income from another job. It should not give [an Act] recipient a greater income and benefits than they [*sic*] otherwise would have enjoyed but for their injury." The Village argues that by defining "catastrophic" as *Krohe* did, this court "is all but guaranteeing a windfall that the legislature never intended." The Village argues: "If the legislature intended that the granting of a line of duty pension automatically triggers [Act] benefits then it could have *and should have* either written [the Act] specifically that way or given the authority to pension boards to make those determinations. But the legislature did neither of those things." (Emphasis in original.)

¶ 27 We decline the Village's invitation to depart from this court's precedent. This court decided *Krohe* in 2003 and *Nowak* in 2008, but the legislature has not altered this court's construction of "catastrophic injury" as used in section 10(a) of the Act. "Our interpretation is considered part of the statute itself until the legislature amends it contrary to that interpretation." *Abruzzo*, 231 Ill. 2d at 343.

¶ 28 The Village insists that it was "collaterally estopped" from litigating the issue of whether Heelan had suffered a catastrophic injury under section 10(a) of the Act, and assigns error to

---

[6]The dissenting justice in the appellate court accepted the Village's view of *Krohe* and its progeny. 2014 IL App (2d) 130823, ¶¶ 44-46 (McLaren, J., dissenting).

the alleged estoppel. We disagree. As with the lower courts, our analysis does not involve collateral estoppel, but rather statutory construction. Heelan's award of a line-of-duty disability pension establishes that he suffered a catastrophic injury *as a matter of law*.

¶ 29                           B. Procedural Due Process

¶ 30    The Village contends that the cumulative effect of the lower courts' decisions was to deny the Village procedural due process in the declaratory judgment action because the Village was denied the "right to conduct discovery and to defend itself against Heelan's claim that he was entitled to [Act] benefits." We reject this contention for the following reasons.

¶ 31    The federal and Illinois Constitutions protect persons from state governmental deprivations of life, liberty, or property without due process of law. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. Procedural due process concerns the constitutional adequacy of the specific procedures employed to deny a person's life, liberty, or property interests. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985); *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 415 (1997). Due process entails an orderly proceeding wherein a person is served with notice, and has an opportunity to be heard and to present his or her objections, at a meaningful time and in a meaningful manner, in a hearing appropriate to the nature of the case. *Armstrong v. Manzo*, 380 U.S. 545, 550, 552 (1965); *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 432-33 (1990). The purpose of these requirements is to protect persons from mistaken or unjustified deprivations of life, liberty, or property. *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972); *Federation of Teachers*, 178 Ill. 2d at 415. A procedural due process claim presents a legal question subject to *de novo* review. *WISAM 1, Inc. v. Illinois Liquor Control Comm'n*, 2014 IL 116173, ¶ 24.

¶ 32    The Village maintains its position that the Act and pension proceedings involve different issues. Citing section 3-114.1 of the Illinois Pension Code (40 ILCS 5/3-114.1 (West 2010)), the Village argues that in a line-of-duty disability pension proceeding, a pension board does not consider whether the injury is "catastrophic." According to the Village: "Each of these statutes presents different issues and requires different proofs. Heelan did not litigate the same issues at the pension board which must be determined in this case." The Village asks: "How then can a court bar the Village from taking any discovery or introducing any evidence regarding the nature, extent or causation of Heelan's injuries in a constitutionally permissible manner?" The Village complains that it "never had any opportunity to litigate anything."[7]

¶ 33    Based on this court's construction of section 10(a) of the Act, there is nothing to litigate in this case. "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 8 (2003). We reiterate that proof of a line-of-duty disability pension establishes a catastrophic injury under section 10(a) of the Act as a matter of law. "Accordingly, where it is uncontroverted that a line-of-duty disability pension has been awarded, section 10(a) is satisfied, and there is no need to engage in discovery or present evidence regarding the claimant's injury." 2014 IL App (2d) 130823,

_____

[7]The dissenting justice in the appellate court likewise contended that the Village was denied procedural due process. 2014 IL App (2d) 130823, ¶¶ 48-49, 52-53 (McLaren, J., dissenting).

¶ 26. We further note the Village's concession as to section 10(b). For procedural due process to apply, there must be some factual dispute. *Codd v. Velger*, 429 U.S. 624, 627 (1977) (*per curiam*); see *Securities & Exchange Comm'n v. First Choice Management Services, Inc.*, 709 F.3d 685, 688 (7th Cir. 2013); *Oklahoma Education Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n*, 889 F.2d 929, 936 (10th Cir. 1989). The Village cannot make that showing.

¶ 34 Indeed, the absence of specific criteria for Act benefits is a reminder that the granting of benefits under the Act "is a legislative rather than adjudicative decision. The difference is critical." *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 468 (7th Cir. 1988). It is established that the enactment of a statute itself generally affords all of the process that is due. *Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 445 (1915); *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 107-08 (1990). The rationale for this rule is as follows:

> "In altering substantive rights through enactment of rules of general applicability, a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements." *United States v. Locke*, 471 U.S. 84, 108 (1985).

The rule applies to legislative changes in entitlements to public benefits. *Atkins v. Parker*, 472 U.S. 115, 129-30 (1985) (and cases cited therein).

¶ 35 In the case at bar, absent special statutory protection, a public safety officer's employer-sponsored health insurance coverage expired upon the termination of the officer's employment by the award of the line-of-duty disability pension. The Act lengthens such health insurance coverage beyond the termination of the officer's employment. *Nowak*, 2011 IL 111838, ¶ 17. By enacting the Act, the General Assembly wrought a general and substantive change in the scope of this important public benefit. The Village "had no greater right to advance notice of the legislative change *** than did any other voters." *Atkins*, 472 U.S. at 130. Accordingly, the Village was not deprived of procedural due process in the declaratory judgment action. Rather, the enactment of the Act itself afforded the Village all of the process that it was due.

¶ 36 Lastly, we observe that the Village raises issues concerning its standing to petition for leave to intervene in Heelan's line-of-duty disability pension proceeding, the Board's legal obligation to allow the intervention, and how the answers to these questions affect the Village's ability to litigate the nature, extent, and causation of Heelan's injuries. We need not and do not address these issues.

¶ 37 "[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982); see *Tampam Farms, Inc. v. Supervisor of Assessments*, 271 Ill. App. 3d 798, 804 (1995). Accordingly, to the extent that the Village's "inability to litigate" at Heelan's disability pension proceeding refers to his catastrophic injury as provided in section 10(a) of the Act, the enactment of the statute itself afforded the Village all of the process that it was due. *Locke*, 471 U.S. at 108.

¶ 38 Also, to the extent that the Village's "inability to litigate" at Heelan's disability pension proceeding refers to his award of a line-of-duty disability pension, the Village cannot complain of an alleged procedural due process violation. The Village chose not to petition to intervene in Heelan's disability pension proceeding or otherwise object to the Board's decision, although the Village manager and the attorney for the Village were physically present at the proceeding. If an established procedure exists that appears to provide due process, a plaintiff cannot skip that procedure and use the courts to recover what the plaintiff wants. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). The Village's strategic choice not to petition to intervene in the proceeding constitutes a forfeiture of any procedural due process claim. *People v. DeLuca*, 302 Ill. App. 3d 454, 457 (1998); *Klein v. Steel City National Bank*, 212 Ill. App. 3d 629, 634-35 (1991); *Marlowe v. Village of Wauconda*, 91 Ill. App. 3d 874, 883 (1980); see *United States v. Charles George Trucking Co.*, 823 F.2d 685, 690-91 (1st Cir. 1987); *Riggins v. Board of Regents of the University of Nebraska*, 790 F.2d 707, 711-12 (8th Cir. 1986).

¶ 39                                              III. CONCLUSION
¶ 40 For the foregoing reasons, the judgment of the appellate court is affirmed.

¶ 41 Affirmed.