2019 IL App (2d) 180400-U
No. 2-18-0400
Order filed December 5, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| NATIONSTAR MORTGAGE, LLC, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 11-CH-1221 |
| | ) | |
| RACHEL L. JOHNSON; CARRIE D. TEAGER; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Nominee for Lehman Brothers Bank, FSB; PORTFOLIO RECOVERY ASSOCIATES, LLC; UNKNOWN OWNERS; NON-RECORD CLAIMANTS; and UNKOWN OCCUPANTS, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Rachel L. Johnson and Carrie D. Teager, | ) | James D. Orel, |
| Defendants-Appellants). | ) | Judge, Presiding. |

_____

JUSTICE BRIDGES delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in granting summary judgment for Nationstar or in approving the foreclosure sale. It also did not abuse its discretion in denying defendants' request for a continuance. Defendants forfeited their argument that the trial court was biased against them, and the record also did not support their argument. Therefore, we affirmed.

¶ 2    In this residential mortgage foreclosure case, defendants, Rachel L. Johnson and Carrie D. Teager, appeal from the trial court's rulings (1) granting summary judgment in favor of plaintiff, Nationstar Mortgage, LLC, (Nationstar) and (2) approving the foreclosure sale. Defendants raise numerous arguments related to the standing of Nationstar and its predecessor, and they also argue that their due process rights were violated and that the trial judge was biased against them. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    According to defendants, they originally purchased their home in Naperville in 1996. Lehman Brothers Banks, FSB, loaned defendants $788,000 on March 28, 2007, secured by a mortgage on the real estate. Aurora Loan Services, LLC (ALS), was the loan's servicer and filed a complaint to foreclose the mortgage about two years later, on February 2, 2009. Defendants replied and raised affirmative defenses, and they also filed a counterclaim. The complaint was dismissed on October 6, 2009, pursuant to a release and settlement agreement involving a loan modification. The agreement included the following paragraph, entitled "Borrowers' Releases":

> "Upon the execution of this Agreement and the related Loan Modification Agreement and without need for further documentation, the Borrowers and each of them release and forever discharge [ALS], as well as any and all of its affiliates, assignors, assignees, *** predecessors, successors ***, and all other persons or entities with any past, present or future legal interest in, connection to, ownership of, purchase of, assignment of, servicing of, or origination of the Subject Loan *** from any and all manner of claims, actions, causes of action, rights, judgments, debts, contracts, promises, allegations, demands, obligations, duties, suits, expenses, assessments, penalties, charges, injuries, losses, costs, damages and liabilities, *including but not limited to those claims that were*

*asserted or that could have been asserted in their allegations*, *of every kind and manner whatsoever concerning, regarding or arising in any way out of the Subject Loan*, which the Borrowers and each of them at any time had or at the time of their execution of this Agreement have against [ALS] and/or any or all of the other Released Parties, whether now known, claimed, asserted, suspected or discoverable by the Borrowers and each of them, and/or their attorneys \*\*\*."  (Emphasis added.)

The trial court order stated that the complaint was dismissed without prejudice; defendants' counterclaim was dismissed with prejudice; and "all claims or defenses of Defendants [were] released and forever barred."

¶ 5    ALS filed a second complaint to foreclose the 2007 mortgage on March 8, 2011, alleging that defendants had defaulted on August 1, 2010. On June 30, 2011, ALS filed a motion for judgment of foreclosure and order for sale, and a motion for default. Defendants subsequently appeared *pro se* and filed an answer and affirmative defenses. ALS moved to strike the affirmative defenses on August 26, 2011, citing the settlement agreement.

¶ 6    An attorney entered an appearance for defendants on October 4, 2011, and was permitted to withdraw the *pro se* answer and affirmative defenses. The trial court's order stated that defendants were not to file any affirmative defenses without first seeking leave of the court.

¶ 7    On November 15, 2011, defendants filed a motion to dismiss the complaint, alleging that ALS lacked standing to sue because it was not the owner of the note that the mortgage secured (Note). In its response, ALS argued that it had standing to foreclose as the holder of the Note endorsed in blank, and as the mortgagee of record. The trial court denied defendants' motion to dismiss on January 10, 2012. At the hearing, the trial court stated that there was a low hurdle for a

foreclosing bank to defeat a motion to dismiss based on a lack of standing, but it suggested that ALS bring the original note to court for inspection at the time of judgment.

¶ 8    On February 8, 2012, without leave of court, defendants filed an answer and affirmative defenses, asserting lack of standing and unclean hands. On January 10, 2013, Nationstar was substituted as plaintiff, with defendants stating that they had no objection.

¶ 9    Nationstar filed a motion for summary judgment on August 2, 2013. It argued that ALS had standing to bring the action as the holder of the Note that was payable to the bearer, and as the mortgagee of record. Nationstar argued that, as the current holder of the Note, it was now entitled to enforce the Note. It further argued that defendants had no defense of unclean hands.

¶ 10    On August 14, 2013, defendant filed a motion to compel regarding redacted portions of documents provided to them in discovery. The trial court granted the motion on October 8, 2013, ordering that Nationstar provide a compliant privilege log. During the hearing, it noted that defendants had pending affirmative defenses that were not stricken.

¶ 11    On January 8, 2014, defendants filed objections to Nationstar's privilege log. A hearing on the objections took place on April 21, 2014. The trial court discussed the history of the case stating:

> "And I did get a full set of the pleadings and I went through the case and I had some observations. There had been a previous case, and that previous case regarding the subject property was disposed of with an order that indicated Defendants' counterclaim is dismissed with prejudice and all claims or defenses of Defendants are released and forever barred. And then from subsequent pleadings I see there was a settlement agreement; there was a release; there was a loan modification with a modified interest rate of 3 percent; and then *** there was a default on the loan modification. There was a new foreclosure suit filed, and Defendants again filed—despite the agreement, filed affirmative defenses. Then

on October 17, 2011, a motion to strike those was to be heard and there was a withdrawal of the answer and affirmative defenses. And in that order, Defendants shall not file any affirmative defenses without first seeking leave of court."

The trial court questioned how the case got to the point where there were affirmative defenses filed without first seeking leave of the court, and now they had discovery issues.

¶ 12    Defense counsel stated that the affirmative defenses were based on actions occurring after the settlement. The trial court disagreed, stating:

"Not standing. And not only was standing not an exception to that, but the modification agreement was with Aurora Loan Services on top of it, which was the original Plaintiff who filed the case. So how do we get to a standing issue in a case where the Defendant entered into a loan modification with Aurora Loan Services, released any claims they had, and has a bar from filing an affirmative defense because of the *** preceding events that led up to this?"

Defense counsel stated that when he filed the affirmative defenses, ALS answered and did not raise objections to them. Nationstar's counsel stated that its position was that the issue was appropriate for summary judgment, but that the hearing on that motion was put off pending discovery disputes.

¶ 13    The trial court then stated that ALS may have thought that it was more expeditious to reply and file a motion for summary judgment then to brief a motion to strike. It continued:

"Now, on the 2009 [case] *** Judge Cerne was the judge; so I wasn't aware of that until I reviewed the history of this. *** These defenses were released, and I see there was a loan modification entered into with Aurora Loan Services. So the Court, on its own motion, is striking the affirmative defenses and is not going to uphold the Defendants'

request for further discovery on this. This is a very clear-cut—$788,000 loan, a very clear-cut situation where in the initial case Defendant filed a counterclaim—And I know [defense counsel] wasn't involved in all this, nor was this Court, nor was [Nationstar's] counsel, *** but there was an agreement that was supposed to bar the very thing that's going on here, which is another round of defenses asserted and motions. And it's certainly not right for the Defendant who enters into a modification with a 3-percent interest rate—certainly a very charitable interest rate in this or any market—to then come in—with Aurora Loan Services *** despite the releases which are evidenced in the order, the settlement agreement, to then come in and contest standing and then to assert as part of their pleadings that the Plaintiff somehow did something wrong in attaching the settlement agreement that allowed for all of this.

So on this record the Court, on its own motion, is striking the affirmative defenses based on the court orders as well as the release and settlement agreement and is *** overruling the Defendants' objections to the Plaintiff's supplemental privilege log; and that will be the disposition of the motion for today."

¶ 14 Nationstar stated that, in light of the trial court's ruling, it would need to file an updated affidavit for its summary judgment motion. The trial court agreed and further stated that defense counsel could respond to whether the amounts were correct. Nationstar filed a loss mitigation affidavit on November 20, 2014.

¶ 15 Defendants were given leave to file a response to the motion for summary judgment *instanter* on February 3, 2015. They admitted that the Note was endorsed in blank, creating the presumption that the possessor of the Note was a holder in due course. However, they argued that Nationstar was clearly not a holder in due course because it took possession of the Note during a

foreclosure action, when the Note was already in default. Defendants argued that there was also no evidence as to when ALS purportedly became a holder in due course or otherwise came into possession of the Note. Defendants argued that they learned through discovery that the owner of the Note was allegedly Wells Fargo as a trustee of a trust, but documents showed that the Note was not properly and timely transferred to the trust in accordance with the trust's provisions. Defendants argued that, therefore, Lehman Brothers Holding, Inc., which had filed for bankruptcy, still owned the Note. Defendant maintained that the trial court should deny Nationstar's motion for summary judgment because significant facts existed as to the identity of the Note's owner, who could not be the entity on whose behalf Nationstar claimed to be acting. Defendant's attached to their response an affidavit and exhibits of John Moran, a forensic document examiner, who opined that the trust did not own the Note.

¶ 16    Nationstar argued in its reply in support of its motion for summary judgment that defendants' arguments were legally meritless; that they impermissibly sought to relitigate their stricken affirmative defense of standing; that defendants lacked standing to challenge the validity of the assignments; that the bankruptcy of Lehman Brothers Holding, Inc., was irrelevant; and that Moran's affidavit should be stricken because it did not comply with Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013).

¶ 17    A hearing on the motion for summary judgment took place on May 12, 2015. At the beginning of the hearing, Nationstar's counsel stated that he produced the original Note to defense counsel shortly before the hearing. Defense counsel stated, "It appears to be the original." The trial court asked to see it and read it into the record. It then granted summary judgment for Nationstar, stating:

"There were affirmative defenses [that] previously raised standing which is obviated by a Note endorsed in blank which is bearer paper, and plaintiff is the bearer.

The unclean hands affirmative defense and arguments related to a settlement agreement that had a confidentiality provision, but there's always a glaring exception to that, that is, if there is, in fact, a breach and the plaintiff has to proceed, they have by necessity the right to produce that document. So that's not going to hold up this proceeding.

The other alleged defenses are not viable defenses on this cause of action which is a 2007 loan and then there was a 2009 dismissal of the case per a loan modification. And for whatever reason, even though the loan modification reduced the rate to three percent, there was a default under the loan modification.

So on this record, there's no issue of material fact. Plaintiff is entitled to Judgment as a matter of law."

Johnson requested leave to ask a question, and then asked about the effect of the forensic audit revealing that the Note was not included in the trust's assets. The trial court stated that the Note was endorsed in blank and was bearer paper, and because Nationstar was the bearer of the Note, it was the party entitled to move forward on the Note. The trial court entered a judgment for foreclosure and order of sale.

¶ 18    Defendants filed a motion to reconsider on June 15, 2015, through additional counsel. They argued that Nationstar lacked standing to foreclose because the trust's interest in the mortgage was acquired through an illegal mortgage transaction, in violation of the Residential Mortgage License Act of 1987 (205 ILCS 635/1-1 *et seq.* (West 2014)), and Illinois courts were prohibited from enforcing illegal transactions and contracts. They argued that, for the same reason, the doctrine of

unclean hands applied. Last, they argued that the trial court erred by failing to ask the defendants themselves if they had the opportunity to review the document purporting to be the original Note.

¶ 19    The trial court denied the motion to reconsider on October 5, 2015, stating that standing as an affirmative defense had been stricken, and the original Note was produced in open court and was endorsed in blank.

¶ 20    A judicial sale was scheduled for December 3, 2015. On December 1, 2015, defendant filed an emergency motion to stay the sale, alleging that they had applied for a loan modification. The record contains a docket entry for the following day which states that no action was taken. The judicial sale was later rescheduled to March 15, 2016. Defendants' counsel was granted leave to withdraw on March 7, 2016, and defendants were given 21 days in which to file an appearance *pro se* or through new counsel. The trial court denied an oral motion to stay the sale.

¶ 21    The judicial sale was rescheduled many times, with the ultimate sale date on March 27, 2018. The prior day, defendants filed a *pro se* motion to stay the foreclosure sale. A ruling on the motion is not contained in the record. The sale took place as scheduled. The bid price was $989,008.58, leaving a deficiency of $353,903.94.

¶ 22    Nationstar filed a motion for an order approving the sale on April 30, 2018. The motion was heard on May 7, 2018. Defendants appeared *pro se* and asked for time to respond. They said that they had just received notice of the motion two business days before the hearing[1] and had not had a chance to respond. The trial court stated that the case was from 2011 and asked if defendants were surprised that there was a motion for an order to confirm the sale. Johnson stated that she was planning to file a motion to vacate the sale because Nationstar did not have the right to the

---

[1] May 7, 2018, was a Monday.

Note that was in its possession. The trial court asked if defendants previously had counsel and what had happened in the case. Defendants said that they had counsel and that there was a grant of summary judgment. The trial court asked if defendants wanted to make a record of anything, and Johnson said that they wanted to respond because there were issues of material fact. The trial court stated that question had already been decided in summary judgment, and it granted the motion for an order confirming the sale. Johnson said that she would appeal, and then asked: "May I ask why you are avoiding our rights and not allowing us to get another attorney?" The trial court responded "Your case has been heard, ma'am. Thank you."

¶ 23    Defendants timely appealed and have filed *pro se* briefs.

¶ 24                              II. ANALYSIS

¶ 25    Defendants' notice of appeal states that they are appealing from the trial court's orders of May 12, 2015 (its ruling on the motion for summary judgment) and May 7, 2018 (its order approving the sale). Correspondingly, they state in their brief that they are contesting the trial court's ruling for summary judgment, and they also state that their due process rights were violated during the May 7, 2018, hearing and at other times.

¶ 26    In specifying the issues presented for review in their brief, defendants list 15 issues largely related to ALS's and Nationstar's standing to litigate the action, and 2 issues regarding the alleged violations of their due process. We summarize defendants' arguments as they are presented in the argument section of their brief.

¶ 27    Defendant's first argument stems from Nationstar's answer in discovery that Wells Fargo owned the Note as the trustee of a trust. Defendants contend that reasonable inferences within the record support the conclusion that the trust does not own the Note. Defendants argue that the Trust lacked standing to foreclose because (1) the Note does not meet Security and Exchange

Commission and Internal Revenue Service requirements to be owned by the trust; and (2) the transfer of the Note was void because (a) there was no evidence that the trust purchased, transferred, registered, or deposited the mortgage, (b) the transfer violated Real Estate Mortgage Investment Conduit (REMIC) requirements, and (3) defendants have rights as homeowners to challenge the "Trust PSA." Relatedly, defendants argue that forensic evidence within the record supports the conclusion that the trust does not own the Note, in that the Note is not a REMIC-qualified mortgage, and there was a lack of qualifying dates, indorsements, unbroken chain of title, and trustee acceptance.

¶ 28    Defendants further argue that the trial court erred in granting Nationstar summary judgment, because genuine issues of material fact exist. They maintain that: (1) the trial improperly awarded summary judgment to Nationstar based on possession of the Note alone; (2) the trial court did not compel production of the original Note during proceedings, thereby failing to conclusively refute issues of standing; and (3) there was a genuine issue of material fact regarding what entity held and owned the mortgage.

¶ 29    In a similar vein, defendants argue that the record shows that standing was never truly established. They argue that ALS lacked standing to file the March 8, 2011, foreclosure complaint because: it failed to produce the original Note, raising questions about a possible fraudulent act; the assignment of the mortgage to ALS was invalid due to the Lehman Brothers bankruptcy; MERS lists "Aurora Commercial Corp," rather than "Aurora Loan Services," as the Note's servicer; and MERS held no financial interest in the Note and could not have accepted or assigned the mortgage from or to ALS. Defendants argue because ALS lacked standing, Nationstar could not inherit its standing, and Nationstar could not represent the trust as the Note's owner, as the Trust never owned the Note. Defendants argue that reasonable inferences within the record support

the conclusion that multiple failures of chain of title exist, and the process validating standing to foreclose was flawed from beginning to end.

¶ 30    Nationstar responds that no genuine issue of material fact existed and that it was entitled to summary judgment. Nationstar points out that defendants do not dispute that they defaulted on the loan, nor do they contest the amount due under the Note. Nationstar agues that defendants challenge its standing, but they are barred from doing so based on the release defendants signed to settle and dismiss the 2009 foreclosure case. Nationstar maintains that in the release, defendants released ALS and its successors from any and all claims "of every kind and manner whatsoever" that were asserted or could have been asserted against ALS in the 2009 foreclosure, which would include the affirmative defense of standing.

¶ 31    Nationstar argues that defendants' standing argument is also barred by *res judicata*, in that defendants' counterclaim and all their defenses that they asserted in the 2009 foreclosure were dismissed with prejudice. Nationstar maintains that a dismissal with prejudice following a settlement is an adjudication on the merits for purposes of *res judicata*. See *Camper v. Burnside Construction Co.*, 2013 IL App (1st) 121589, ¶ 34 (an order dismissing an action with prejudice generally constitutes a final judgment on the merits for *res judicata* purposes). Nationstar argues that the adjudication on the merits, coupled with the fact that the same parties and same issues were being litigated in the 2011 foreclosure, triggered *res judicata*. See *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390 (2001). Nationstar contends that because the affirmative defense of standing could have been raised in the 2009 foreclosure, it was barred by *res judicata* when the 2011 foreclosure complaint was filed by the same plaintiff.

¶ 32    Nationstar further argues that defendants do not seek review of the trial court's dismissal of their affirmative defenses on April 21, 2014, which adjudicated the question of standing, so defendants could not relitigate that issue through a response to summary judgment.

¶ 33    Nationstar argues that even if defendants properly argued standing at the summary judgment stage, there was still no error because Nationstar possessed a Note endorsed in blank. Nationstar argues that its possession of the Note and mortgage was sufficient to confer standing, and that the identity of the owner of the Note, the validity of assignments, and the alleged noncompliance with the pooling and servicing agreement for the trust have no bearing on standing.

¶ 34    We agree with Nationstar that defendants may not rely on Nationstar's alleged lack of standing as a basis for asserting that the trial court erred in granting Nationstar summary judgment. First, it is clear from defendants' notice of appeal and briefs that they are contesting the trial court's ruling on summary judgment and its subsequent order approving the sale. However, the trial court's rulings on the issue of standing predate its ruling on the motion for summary judgment. Specifically, on April 21, 2014, the trial court struck defendants' affirmative defenses based on its October 4, 2011, order stating that defendants were not to file any affirmative defenses without first obtaining leave of the court, and based on the release and settlement agreement. Defendants do not argue that the trial court erred in striking their affirmative defenses, which included standing.

¶ 35    Defendants' failure to argue that the trial court erred in striking their affirmative defenses results in forfeiture of the issue on review.  See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (points not argued are forfeited). That is, a reviewing court is not a repository into which an appellant may dump the burden of argument and research, nor is it our obligation to act as an advocate, and the failure to clearly define issues and support them with authority results in forfeiture of the argument.

*Atlas v. Mayer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 33. We recognize that defendants are appealing *pro se* and may not have realized that they needed to challenge the trial court's April 21, 2014, ruling. However, *pro se* litigants are not entitled to more lenient treatment than attorneys. *Gillard v. Northwestern Memorial Hospital*, 2019 IL App (1st) 182348, ¶ 45. Parties who chose to represent themselves in Illinois courts must comply with the same rules as licensed attorneys, and they are held to the same standards. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78. Because defendants do not challenge the trial court's ruling striking their affirmative defenses, which included standing, they may not rely on the issue of standing to assert that an issue of material fact precludes summary judgment.

¶ 36    Even if, *arguendo*, defendants properly challenged the trial court's April 21, 2014, order, we would still affirm its ruling. Whether the trial court erred in striking affirmative defenses is an issue that we review *de novo*. See *Storino, Ramello & Drukin v. Rackow*, 2015 IL App (1st) 142961, ¶ 35 (trial court's decision to grant or deny a motion to strike is reviewed *de novo*). The trial court based its ruling in part on the fact that the October 4, 2011, order prohibited defendants from filing affirmative defenses without leave of the court. Defendants have not challenged the October 4, 2011, ruling, nor did they seek leave to refile their affirmative defenses.

¶ 37    Based on our resolution, we do not address Nationstar's arguments that defendants are barred from contesting standing due to *res judicata* and the release and settlement agreement, and that it proved standing through possession of the Note endorsed in blank.

¶ 38    We now turn to the order that defendants did appeal, being the trial court's grant of summary judgment. Summary judgment is appropriate only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment

as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). We review *de novo* a trial court's ruling on a motion for summary judgment. *Nichols v. Fahrenkamp*, 2019 IL 123990, ¶ 13.

¶ 39    As discussed, defendants may not rely on an alleged lack of standing to contest the trial court's grant of summary judgment for Nationstar, because defendants have not argued that the trial court erred in striking their affirmative defense of standing. As all of defendants' arguments on appeal challenging the trial court's grant of summary judgment relate to standing to litigate the foreclosure action, we affirm the trial court's grant of summary judgment for Nationstar.

¶ 40    Defendants additionally argue that they were denied due process by the trial court's refusal to grant them a continuance at the May 7, 2018, hearing on Nationstar's motion for an order approving the judicial sale. Defendants argued at the hearing that they had received notice of the hearing only two business days prior and wanted time to respond to the motion and to obtain an attorney. Defendants argue that the "hostility of the trial court in this hearing was shocking and the atmosphere was one of intimidation and shutting down any question regarding the sale as quickly as possible." Defendants maintain that during the final and most critical hearing of the case, and with little notice as to the particulars of the motion, the trial court denied them the opportunity to consider their options, research the motion, verify its amounts and claims, and to secure counsel. Defendants point out that section 15-1508(b) the Illinois Mortgage Foreclosure Law states that the trial court should not confirm the sale if it was conducted fraudulently or justice was not otherwise done. 735 ILCS 5/15-1508(b) (West 2018). They argue that "evidence existed concerning the validity of the Note, the ownership of the Note and unbroken chain of title that could have satisfied these requirements," but they were denied their chance to make this argument before the trial court. They cite *Powell v. Alabama*, 287 U.S. 45, 69 (1932), where the Supreme Court stated: "If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to

hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense."

¶ 41    Procedural due process involves the constitutional adequacy of the procedures used to deny a person's life, liberty, or property interests. *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 31. "Due process entails an orderly proceeding wherein a person is served with notice and has an opportunity to be heard and to present his or her objections, at a meaningful time and in a meaningful manner, in a hearing appropriate to the nature of the case." *Id.* We review *de novo* a claim regarding a violation of procedural due process. *Id.*

¶ 42    Defendants' argument also involves a request for a continuance. A litigant does not have an absolute right to a continuance, and whether to grant or deny a motion for a continuance is within the trial court's sound discretion. *Andersonville South Condominium Ass'n v. Federal National Mortgage Co.*, 2017 IL App (1st) 161875, ¶ 28. A trial court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the same view. *Id.*

¶ 43    We conclude that defendants' procedural due process rights were not violated. Defendants received notice of the judicial sale scheduled on March 27, 2018, as shown by their *pro se* motion to stay the sale. They were not successful in obtaining a stay, as the sale took place as scheduled. Thereafter, Nationstar filed a motion for an order approving the sale on April 30, 2018, and defendants received notice of the May 7, 2018, hearing. Although they argue that they had only two business days' notice, the actual sale of the property had taken place over one month before, so a confirmation of the sale was the next step in the foreclosure process and should not have come as a surprise to defendants. This is especially true considering that the litigation had been ongoing

since 2011. At the hearing itself, the trial court allowed defendants to speak and make a record of their objections. Accordingly, defendants sufficiently received notice and had an opportunity to be heard and present their objections.

¶ 44    We additionally conclude that the trial court did not abuse its discretion in denying defendants' implicit request for a continuance. At the hearing, defendants stated that they wanted time to present their objections to Nationstar's standing, and they again assert on appeal that they were denied the opportunity to argue standing at the hearing. However, as discussed, the trial court had already adjudicated the question of standing by striking defendants' affirmative defenses. Further, after a motion to confirm the sale has been filed, it is not sufficient under the Foreclosure Law to raise a meritorious defense to the complaint. *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 26. Defendants also argue that they were not allowed time to obtain an attorney, but they did not even request time to retain an attorney until after the trial court orally granted the motion to confirm the sale. Moreover, defendants were represented by counsel during much of the proceedings. Counsel withdrew in March 2016, and defendants thereafter had ample time to secure new counsel, including after being notified of the judicial sale scheduled on March 27, 2018. *Powell* does not assist defendants, as that case "determined that a due process violation occurs only when a state or federal court arbitrarily refuses to hear from privately retained counsel in a criminal or civil case." *People v. Gawlak*, 2019 Il 123182, ¶ 33 (citing *Powell,* 287 U.S. at 69). As stated, here defendants were represented by counsel during years of litigation, and they had ample time to retain new counsel. Further, the trial court did not arbitrarily refuse to hear from their counsel during the May 7, 2018, hearing. Accordingly, *Powell* does not apply.

¶ 45    Last, defendants argue that the trial court demonstrated a persistent bias against them during the foreclosure proceedings. Defendants argued that the comments made by the trial court

throughout the proceedings reveal an assumption that because the new mortgage rate that defendants had been given was favorable, they should not have defaulted. Defendants refer to the trial court's statements on April 21, 2014, repeatedly referring to the 3% interest rate in the loan modification and defendant's default.

¶ 46    Defendants did not raise the issue of the trial judge's alleged bias during the proceedings below, such as through a motion for a substitution of judges, and therefore have forfeited this issue on appeal. *Gean v. State Farm Mutual Automobile Insurance Co.*, 2019 IL App (1st) 180935, ¶ 19 (issues not raised in the trial court are forfeited and may not be raised for the first time on appeal). Even otherwise, defendants' argument is without merit. A trial judge is presumed to be impartial, and the party alleging prejudice has the burden of overcoming this presumption. *Thomas v. Weatherguard Construction Co.*, 2018 IL App (1st) 171238, ¶ 47. A judge's rulings alone will rarely constitute a valid basis for a claim of judicial bias or partiality. *Id.* ¶ 48. Even judicial remarks during a trial that are critical or disapproving of, or hostile to, counsel, the parties, or their cases, generally are not sufficient for a bias or partiality challenge. *Id.* ¶ 49. Instead, the remarks must reveal a bias stemming from an extrajudicial source or reveal such a high degree of favoritism or antagonism such that a fair judgment is impossible. *Id.*

¶ 47    Here, defendants do not allege that the trial judge was biased or prejudiced against them due to an outside source. Instead, they rely on his remarks during the hearings, particularly the hearing on April 21, 2014, when he struck their affirmative defenses. We have reviewed the report of proceedings,[2] and it is clear that the trial court based its ruling on the settlement agreement.

---

[2] Excerpts from that hearing date are set forth earlier in our disposition. See *supra* ¶¶ 11-13.

Although it commented on the low interest rate in the loan modification, these were superfluous remarks that were not hostile to defendants and did not factor into its ruling. We also note that the trial court's striking of the affirmative defenses came several years after the action began, which would indicate a lack of hostility towards defendants, and that the litigation continued for several years afterwards. We have additionally considered the trial court's April 21, 2014, ruling under *de novo* review and determined that we would have affirmed the order even if defendants had not forfeited review of that ruling (see *supra* ¶ 36). Accordingly, defendants' argument is without merit.

¶ 48                              III. CONCLUSION

¶ 49    For the reasons stated, we affirm the judgement of the Du Page County circuit court.

¶ 50    Affirmed.